IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| **JAMES MCDANIEL,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**JERRY C. MCDANIEL, JR. AND J.C. MCDANIEL CONSTRUCTION, LLC,**<br><br>**Defendants** | Civil Action No. ________________ |

**COMPLAINT**

Plaintiff James McDaniel, by and through the undersigned counsel, brings this action against Defendants Jerry C. McDaniel, Jr. and J.C. McDaniel Construction, LLC showing the Court as follows:

**INTRODUCTION**

1. Plaintiff James McDaniel brings this action pursuant to the anti-discrimination provisions of the Fair Labor Standards Act 29 U.S.C. § 215(a)(3). In his first claim he alleges that his father and former employer, Defendant Jerry C. McDaniel, Jr., retaliated against him for testifying in the FLSA overtime action *Putman v. J.C. McDaniel Construction, LLC et al.*, 1:24-cv-1402-SEG, by making a false criminal report against him, which led to Plaintiff's home being raided by the Barrow County Sheriff's Office.

2. In connection with the same retaliatory actions, Plaintiff also brings a claim against Defendant McDaniel for conspiracy to violate civil rights pursuant to 42 U.S.C. § 1985(2) (Obstructing justice; intimidating party, witness, or juror).

3. Plaintiff also brings claims under Georgia state law for slander (O.C.G.A. § 51-5-4) and Intentional Infliction of Emotional Distress against Defendant McDaniel, also in connection with Defendant McDaniel's retaliatory false criminal report.

4. Finally, Plaintiff also brings a claim against both Defendants for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1).

## PARTIES, JURISDICTION, AND VENUE

5. This Court has original jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because it arises under a federal statute.

6. Plaintiff is a natural person residing in Barrow County, Georgia.

7. Defendant Jerry C. McDaniel, Jr. is a natural person residing in the Gwinnett County, Georgia.

8. Defendant McDaniel can be served with process at his residence at 3190 Kelly Glen Court, Dacula, Gwinnett County, Georgia 30019, or wherever he may be found.

9. Defendant McDaniel is subject to the personal jurisdiction of this Court.

10. Defendant J.C. McDaniel Construction, LLC ("JCMC"), is a domestic limited liability company with its registered office address at 3190 Kelly Glen Court, Dacula, Gwinnett County, Georgia, 30019.

11. JCMC may be served with process through its owner and managing member, Jerry C. McDaniel, Jr., at 3190 Kelly Glen Court, Dacula, Gwinnett County, Georgia 30019.

12. JCMC is subject to the personal jurisdiction of this Court.

13. Venue properly lies in this district and division pursuant to 28 U.S.C. § 1391(b)–(c) because the actions complained of herein occurred in this district and division.

## GENERAL FACTS

**FLSA Coverage and Overtime Violation**

14. Defendant McDaniel is the owner and manager of JCMC.

15. JCMC is a general contracting company.

16. In both 2024 and 2025, JCMC had annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

17. In both 2024 and 2025, JCMC had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

18. In both 2024 and 2025, JCMC had two or more employees handling or selling vehicles, building supplies, and construction equipment manufactured outside the State of Georgia and shipped from outside the State of Georgia.

19. At all relevant times, JCMC was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1).

20. Plaintiff was employed by JCMC from approximately March 2024 through May 31, 2025, as a project manager.

21. Plaintiff's duties as a project manager included: performing estimates for contracting jobs, ordering jobsite materials, dealing directly with JCMC customers, scheduling subcontractors, as well as performing manual labor on job sites and driving commercial trucks to deliver heavy equipment.

22. At all relevant times, JCMC was Plaintiff's "employer" within the meaning of 29 U.S.C. § 203(d).

23. At all relevant times, Defendant McDaniel held ownership interests in JCMC, acted as a manager, was involved in the operation of JCMC on a daily basis, and controlled the terms of Plaintiff's employment.

24. At all relevant times, Defendant McDaniel was Plaintiff's "employer" within the meaning of 29 U.S.C. § 203(d).

25. Beginning in approximately July 2024 and continuing through the end of his employment, Plaintiff regularly worked 50–60 hours per week.

26. From March 2024 through approximately October 2024, Plaintiff was compensated on an hourly basis at the rate of $24 per hour, irrespective of the number of hours he worked.

27. Beginning in approximately October 2024, Defendant McDaniel began paying Plaintiff half-time overtime premiums for hours worked over 40 because he had been sued by former employee Michael Putman for unpaid overtime violations and recognized the extreme financial consequences of continuing to openly violate federal labor laws.

28. Yet even then, Defendant McDaniel was not actually trying to comply with federal law, and subsequently routinely altered Plaintiff's reported hours worked to reduce the number of hours worked, or ordered Plaintiff to perform work without clocking in.

29. Beginning in approximately July 2024 and continuing through the end of his employment, Plaintiff consistently worked more than 40 hours per week but at no time was paid overtime premiums for all hours worked in excess of 40 hours per week.

**Retaliation**

30. Plaintiff is an adult son of Defendant McDaniel and was employed by Defendants McDaniel and JCMC from approximately February or March 2024 until late May 2025.

31. On June 2, 2025, Plaintiff executed a declaration on behalf of Michael Putman, a plaintiff in an FLSA overtime and retaliation action, *Putman v. J.C. McDaniel Construction, LLC*, 1:24-cv-1402-SEG (N.D. Ga.). *See* **Exhibit 1 hereto**.

32. Putman's counsel provided a copy of the declaration to Defendants' counsel on the same day. *See* **Exhibit 2 hereto**.

33. At this time, Defendant McDaniel had custody of Plaintiff's minor son, DM.

34. But because Defendant McDaniel had attacked and choked DM on April 13, 2025, DM had recently come to live with Plaintiff.

35. After learning about Plaintiff's declaration, on June 3, 2025, Defendant McDaniel contacted DM's mother, Joni Osier, and told her to take DM from Plaintiff because Plaintiff was "crazy" and was "on drugs."

36. Based on Defendants' representations, Osier retrieved DM and conveyed him back into Defendant McDaniel's custody.

37. Defendant McDaniel immediately took DM to Florida on an unplanned trip out of fear that Plaintiff intended to take DM to law enforcement to bring criminal charges against him for strangling DM and assaulting Plaintiff's other minor child.

38. Defendant McDaniel met family members at the FL-GA state line and transferred DM into their custody so they could remove him out of state, and then returned home.

39. On June 12, 2025, upon returning DM to Georgia from Florida, and a mere ten days after the delivery of Plaintiff's declaration to Defendants' counsel, Defendant McDaniel—acting on his own behalf and on behalf of JCMC—filed a criminal complaint against Plaintiff with the Barrow County Sheriff's Office ("BCSO") based on false allegations that he procured from DM through threats and intimidation. *See* **Exhibit 3 hereto**.

40. As the child's custodian, Defendant McDaniel was in a position of authority over DM, and abused that authority by pressuring and manipulating DM into providing false testimony to the BCSO to implicate Plaintiff in making threats to kill Defendant McDaniel.

41. Under pressure from Defendant McDaniel, DM falsely told the BCSO that Plaintiff had carved Defendant McDaniel's initials on a bullet and told DM that he intended to approach Defendant from behind and shoot him in the head, had solicited DM to burn his home down for the purpose of committing insurance fraud, and was an active illegal drug user.

42. In support of the criminal complaint, Defendant McDaniel—acting on his own behalf and on behalf of JCMC—and DM falsely accused Plaintiff of (1) threatening to kill Defendant McDaniel, (2) illegal drug use, (3) attempting to procure arson for the purpose of insurance fraud, and (4) possessing a firearm as a felon.

43. Defendant McDaniel—on his own behalf and on behalf of JCMC—also falsely accused Plaintiff to the BCSO of being a felon illegally in possession of firearms.

44. In reality, it was DM who had carved Defendant McDaniel's initials on a bullet, as is confirmed in notes from a therapist's notes from a therapy session on June 2, 2025, and through video recordings in which DM acknowledges that it was him who carved Defendant McDaniel's initials.

45. Through DM, Defendant McDaniel was aware of the existence of the bullet, that DM had carved the initials, and that DM had placed it in a drawer beside Plaintiff's bed, and having that information he pressured DM into lying to law enforcement to frame Plaintiff for multiple felony crimes.

46. Defendant McDaniel was aware that Plaintiff's distant felony conviction had been expunged, yet nonetheless lied to law enforcement that Plaintiff was a felon illegally possessing firearms.

47. BCSO did not immediately take action; rather, over the next several days Defendant McDaniel—acting on his own behalf and on behalf of JCMC—badgered the BCSO —and specifically Investigator Jason Smith—to raid Plaintiff's home, telling them that Plaintiff had an intention to commit "suicide by cop" and assuring them that he would not hold it against them if they killed Plaintiff during the operation.

48. As a direct and proximate result of Defendants' false statements to law enforcement and the false statements that they pressured DM to make, the BCSO raided Plaintiff's home on June 16, 2025.

49. Numerous heavily armed law BCSO officers descended on Plaintiff's home, breaking in and pointing firearms at Plaintiff's wife and his minor children during the raid.

50. BCSO officers searched Plaintiff's home and the surrounding property, destroying extensive property in the process, breaking walls and doors, tracking soil and stones throughout the house and on furniture.

51. The raid did not result in Plaintiff's arrest or any criminal action being filed against Plaintiff because he had in fact committed no crime and was able to provide evidence to the BCSO showing that DM's statements had been false.

52. As a result of the raid, Plaintiff's landlord threatened Plaintiff and his family with eviction.

53. In the aftermath of the raid, Plaintiff has suffered severe emotion distress, including but not limited to:

- Fear for his safety and that of his family, leading him to take them to stay in motels for multiple nights in fear that their home would be raided by law enforcement again
- Depression
- Generalized anxiety

- Difficulty sleeping
- Frequent panic attacks

54. This is not the first time that Defendant McDaniel has filed a false and malicious criminal complaint against a former employee, and in fact, siccing the BCSO on former employees has become a sort of *modus operandi* for Defendant McDaniel.

55. In 2022, he framed another former employee, David Smith, for theft, which resulted in felony criminal charges being brought against Smith. That charge that was ultimately dismissed when Smith produced documentary evidence of his ownership of the property that McDaniel had falsely accused him of stealing.

56. Former employee had witnessed Defendant McDaniel place dirtied company stickers on the property prior to reporting them to the BCSO as stolen.

57. As Defendant McDaniel admitted both to Putman and to Plaintiff, he made this false criminal complaint against Smith in retaliation for Smith reporting environmental violations at McDaniel's other business (Crystal Creek Inert Landfill) with Georgia state regulators.

58. Then, on November 26, 2024, during the course of the above-referenced *Putman* FLSA litigation in this Court, McDaniel also filed a false criminal complaint against Michael Putman with the BCSO, accusing Putman without evidence of having stolen thousands of dollars from Crystal Creek Inert Landfill.

59. Defendant McDaniel admitted to Plaintiff that he had made the criminal complaint against Putman in retaliation for his overtime lawsuit against him.

### COUNT ONE – RETALIATION IN VIOLATION OF 29 U.S.C. § 215(A)(3) (AGAINST BOTH DEFENDANTS)

60. Plaintiff repeats and realleges the allegations set forth in Paragraphs 14–15, 20–24, and 30–53 of this Complaint, and incorporates them herein by reference.

61. By testifying in the Putman FLSA action through an unsworn declaration under penalty of perjury, Plaintiff undertook activities protected under 29 U.S.C. § 215(a)(3).

62. Defendants discriminated against Plaintiff because of his protected activity when Defendant McDaniel—on his own behalf and on behalf of JCMC—made a false police report against Plaintiff.

63. As a result of Defendants' discriminatory acts, Plaintiff has suffered and continues to suffer damages, including but not limited to extreme emotional distress and damage to his property resulting from the police raid of which Defendant McDaniel's retaliation was a proximate cause.

64. Plaintiff is entitled to recover all damages suffered as a result of Defendants' discriminatory acts, punitive damages, nominal damages, and his reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

### COUNT TWO – CONSPIRACY TO VIOLATE CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1985(2) (AGAINST BOTH DEFENDANTS)

65. Plaintiff repeats and realleges the allegations set forth in Paragraphs 30–53 of this Complaint, and incorporates them herein by reference.

66. On or about June 12, 2025, Defendant McDaniel—on his own behalf and on behalf of JCMC—conspired together and with DM to provide false information regarding Plaintiff to the BCSO for the purpose of filing a criminal complaint against Plaintiff.

67. In furtherance of this conspiracy, Defendants did file a criminal complaint against Plaintiff based on knowingly false allegations that Plaintiff made terroristic threats, was an active illegal drug user, and had solicited arson.

68. Defendants' motivation in conspiring with DM to make false allegations and bring criminal charges against Plaintiff was to injure Plaintiff in his person or property because he had testified as a witness in a court of the United States.

69. Plaintiff has suffered injury to his property and person as a result of Defendants' conspiracy and overt acts in furtherance thereof.

70. Accordingly, Defendants have violated Plaintiff's rights in violation of 42 U.S.C. § 1985(2).

## COUNT THREE – SLANDER IN VIOLATION OF O.C.G.A. § 51-5-4 (AGAINST DEFENDANT MCDANIEL)

71. Plaintiff repeats and realleges the allegations set forth in Paragraphs 30–54 of this Complaint, and incorporates them herein by reference.

72. In June 2025, Defendant McDaniel procured false statements from DM to be made to the BCSO regarding purported terroristic threats, illegal drug use, solicitation of arson by Plaintiff, and possession of firearms.

73. In June 2025, Defendant McDaniel made false statements to the BCSO that Plaintiff was a felon.

74. These statements made and/or procured by Defendant McDaniel were false and untrue, and defamed Plaintiff.

75. Defendant McDaniel made and/or procured these false statements with knowledge that the statements were false, or with reckless disregard as to their falsity.

76. The false and defamatory statements were not privileged because they were not made in good faith, the statements were knowingly false, and they were made with actual malice.

77. Each of the false statements made or procured was defamatory per se.

78. Defendant McDaniel's false statements have caused Plaintiff extreme embarrassment and damage to his reputation both personally and professionally.

79. Plaintiff has suffered and continues to suffer extreme emotional distress and has suffered injury to his property as a result of the police raid, of which Defendant McDaniel's Defamatory statements to the BCSO were a proximate cause.

## COUNT FOUR – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AGAINST DEFENDANT MCDANIEL)

80. Plaintiff repeats and realleges the allegations set forth in Paragraphs 30–53 of this Complaint, and incorporates them herein by reference.

81. By procuring knowingly false statements from DM, making knowingly false statements to the BCSO, and by filing a criminal complaint against Plaintiff based on knowingly false premises, Defendant McDaniel's conduct was extreme and outrageous, beyond all bounds of decency, and utterly intolerable in a civilized society.

82. Defendant McDaniel acted recklessly and with intent to cause Plaintiff severe emotional distress.

83. As a direct result of Defendant McDaniel's extreme and outrageous conduct, Plaintiff suffered injury to his property and severe emotional distress, including depression, anxiety, and panic attacks.

84. The severe emotional distress suffered by Plaintiff was a reasonably foreseeable consequence of Defendant McDaniel's extreme and outrageous conduct.

85. As a direct and proximate result of Defendant McDaniel's intentional infliction of emotional distress, Plaintiff has suffered damages including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## COUNT FIVE – FAILURE TO PAY OVERTIME IN VIOLATION OF 29 U.S.C. § 207(A)(1) (AGAINST BOTH DEFENDANTS)

86. Plaintiff repeats and realleges the allegations set forth in Paragraphs 14–29 of this Complaint, and incorporates them herein by reference.

87. At all relevant times, Plaintiff was an employee of Defendants McDaniel and JCMC and covered by the maximum hour requirements of the Fair Labor Standards Act.

88. At all relevant times, Plaintiff regularly worked for Defendants in excess of 40 hours per workweek.

89. Defendants were required to compensate Plaintiff at the rate of one-and-one-half times his regular hourly rate for all hours worked in excess of 40 hours in each workweek.

90. Defendants consistently failed to compensate Plaintiff for all hours worked in excess of 40 hours per week in each workweek throughout his employment.

91. Defendants' failure to compensate Plaintiff for all hours worked in excess of 40 hours per week at the required overtime rate was "willful" within the meaning of 29 U.S.C. § 255.

92. Defendants' failure to compensate Plaintiff at the required rate for all hours worked over 40 hours per week is a violation of 29 U.S.C. §§ 207(a)(1).

93. Plaintiff is entitled to receive his unpaid overtime wages calculated at the rate of one-and-one-half his regularly hourly rate, liquidated damages in an amount equal to his unpaid overtime wages, prejudgment interest to the extent that liquidated damages are not awarded, nominal damages, and his costs of litigation, including reasonable attorney's fees, pursuant to 29 U.S.C. § 216.

**WHEREFORE**, Plaintiff requests that this Court:

a. Grant a trial by jury as to all matters properly triable to a jury;

b. Issue a judgment declaring that Defendants discriminated against Plaintiff in violation of 29 U.S.C. § 215(a)(3);

c. Issue a judgment declaring that Defendants conspired to violate Plaintiff's civil rights in violation of 42 U.S.C. § 1985(2);

d. Issue a judgment declaring that Defendant McDaniel slandered Plaintiff in violation of O.C.G.A. § 51-5-4;

e. Issue a judgment declaring that Defendant McDaniel is liable to Plaintiff for intentional infliction of emotional distress;

f. Issue a judgment declaring that Defendants violated the FLSA's maximum hour requirement with respect to Plaintiff's wages;

g. Award Plaintiff compensatory damages against Defendants in an amount to be determined in the enlightened conscience of a jury;

h. Award Plaintiff punitive damages against Defendants;

i. Award Plaintiff his unpaid overtime wages and liquidated damages in an equal amount;

j. Award Plaintiff prejudgment interest on all amounts owed, to the extent that liquidated damages are not awarded;

k. Award Plaintiff nominal damages;

l. Award Plaintiff his costs of litigation, including reasonable attorney's fees; and

m. Award any and such other further relief this Court deems just, equitable, and proper.

Respectfully submitted this 2nd day of June 2026,

**CALDWELL BRIDGERS & BENJAMIN, LLC**

*s/ Matthew W. Herrington*
Matthew W. Herrington
Ga. Bar No. 275411
Charles R. Bridgers
Ga. Bar No. 080791

Counsel for Plaintiff

1425-A Dutch Valley Place NE
Suite 2650
Atlanta, Georgia 30345
(404) 979-3171
herrington@appliedlegalinsight.com
bridgers@appliedlegalinsight.com

PLAINTIFF'S EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **MICHAEL PUTMAN,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**J.C. MCDANIEL CONSTRUCTION, LLC, CRYSTAL CREEK INERT LANDFILL, LLC, and JERRY C. MCDANIEL, JR.,**<br><br>**Defendants.** | Civil Action No. 1:24-cv-1402-SEG |

**DECLARATION OF JAMES MCDANIEL**

James McDaniel hereby submits this declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746, showing the Court as follows:

1. My name is McDaniel. I am over the age of majority and suffer from no legal disabilities.
2. I make this declaration based on my personal knowledge, observations, and actions.
3. I am the son of J.C. McDaniel, Jr.
4. I was formerly employed by my father's business, J.C. McDaniel Construction, LLC, in various capacities.
5. During my employment, I was able to observe the work of Michael Putman on a regular basis.

6. I worked at J.C. McDaniel Construction's offices in Winder, GA, in January 2019 to February 2022. I also regularly spent time working in the Crystal Creek Inert Landfill offices in Gainesville, GA. During that time, I was able to observe Michael's work on a daily basis.

7. Based on my observations, I can confirm that Michael's work in sales constituted 80% of his in-office work time or more.

8. Throughout much of my employment, I was a personal friend of Michael and frequently spent time at his home on nights and weekends.

9. When at Michael's home, I would frequently observe Michael doing dispatch work outside his regular office hours.

10. My father is a micro-manager and it was my observation that, while Michael gathered information for him, organized information for him, filled out paperwork for him, input data on computers for him, and provided general technical assistance to the point that my father was highly reliant on Michael, Michael did not have authority to act independently with respect to any significant portion of the business. Hiring, firing, and discipline decisions; pricing decisions with customers and vendors; and significant operational decisions were always approved by my father, if they were not his entirely.

11. I cannot state from personal knowledge the degree to which my father relied on recommendations made by Michael in making decisions or not, but I am confident that Michael was not able to make any significant decisions without my father's approval.

12. My father admitted to me that he placed fake Crystal Creek Inert Landfill stickers on gas cans David Smith's house before reporting them to the police as stolen.

13. I personally observed my father offer to allow Michael to take on a job delivering vans from Savannah for Abby Trevino's company as a gift, with Michael to keep the profits from the job. He made this gift in recognition of unpaid assistance that Abby had given him with planning the company Christmas party and with drafting new company policies and procedures.

14. I personally worked on grading work that was performed on Michael's home and the homes of his neighbors in January 2022. I estimate that the value of the work performed on Michael's home was $5,000 based on the company's standard pricing.

15. My father told me that the grading work on Michael's home was being done by J.C. McDaniel Construction, LLC, as a gift.

16. My brother Jacob McDaniel and my brother Brandon McDaniel have commented multiple times that Michael is a major problem for my father's

companies and multiple times commented that I might expect to find a gun sitting in the back seat of my car and know what to do with it. I understood this to mean that they were inviting me to kill Michael. The most recent instance that Jacob made this comment to me was three weeks ago.

I declare under penalty of perjury that the foregoing is true and correct.

Signed by:



F74223CDAE6846D...

James McDaniel

6/2/2025

Date

PLAINTIFF'S EXHIBIT 2

**Subject:** Re: Putman further document production
**Date:** Monday, June 2, 2025 at 7:51:17 PM Western European Summer Time
**From:** Matthew Herrington <herrington@appliedlegalinsight.com>
**To:** Brian Abrams <babrams@hgrslaw.com>, Kristina K. Griffin <kgriffin@hgrslaw.com>, William Story <will@storylawllc.com>
**CC:** Charles R. Bridgers <charlesbridgers@dcbflegal.com>, Jessica Sorrenti <JessicaSorrenti@dcbflegal.com>
**BCC:** Michael Putman <laputt2001@gmail.com>, Dustin Wynne <dustinwynne105@outlook.com>, Matthew Billips <matt@justiceatwork.com>
**Attachments:** image001.jpg, James McDaniel Declaration.pdf

Apologies, the declaration was not attached.

MWH

**Matthew W. Herrington**
DeLong . Caldwell . Bridgers
Fitzpatrick . Benjamin
Direct - Facsimile - Text: 404.596.7972
matthew.herrington@dcbflegal.com

101 Marietta Street NW
Suite 2650
Atlanta, Georgia 30303
404.979.3150
georgiawagelawyers.com

---

**From:** Matthew Herrington <matthew.herrington@dcbflegal.com>
**Date:** Monday, 2 June 2025 at 19:50
**To:** Brian Abrams <babrams@hgrslaw.com>, Kristina K. Griffin <kgriffin@hgrslaw.com>, William Story <will@storylawllc.com>
**Cc:** Charles R. Bridgers <charlesbridgers@dcbflegal.com>, Jessica Sorrenti <JessicaSorrenti@dcbflegal.com>
**Subject:** Putman further document production

Counsel,
Please find attached the declaration of James McDaniel as further document production by Plaintiff/Defendant Michael Putman.
At the risk of stating the obvious, the testimony in the final paragraph is extremely concerning. I am in communication with the US Marshal's Service about next steps.
MWH

**Matthew W. Herrington**
DeLong . Caldwell . Bridgers
Fitzpatrick . Benjamin
Direct - Facsimile - Text: 404.596.7972

matthew.herrington@dcbflegal.com

101 Marietta Street NW
Suite 2650
Atlanta, Georgia 30303
404.979.3150
georgiawagelawyers.com

**Слава Україні!**
🇺🇦 🇺🇦 🇺🇦 🇺🇦

DCBFB specializes in wage and hour claims under the FLSA (the Fair Labor Standards Act) as well as the Family Medical Leave Act. The FLSA establishes the federal minimum wage and requires overtime pay for non-exempt employees.

NO CLIENT RELATIONSHIP: Communication with an attorney or staff member at our office does not create an attorney-client relationship or constitute the provision or receipt of legal advice. Any communication from an attorney or staff member should be considered informational only and should not be relied or acted upon until a formal attorney-client relationship is established via a written agreement.

PLAINTIFF'S EXHIBIT
3

# Barrow County Sheriff's Office

## Summary

**Print Date/Time:** 07/21/2025 08:30
**Login ID:** keturk
**Case Number:** 2025-00036967

Barrow County Sheriff's Office
**ORI Number:** GA0070000

### Case

**Case Number:** 2025-00036967
**Location:** [redacted]
STATHAM, GA 30666
**Reporting Officer ID:** 1696 - Catapano

**Incident Type:** Domestic Disturbance
**Occurred From:** 05/25/2025 15:56
**Occurred Thru:** 06/12/2025 17:41
**Disposition:**
**Disposition Date:**
**Reported Date:** 06/12/2025 15:56 Thursday

### Offenses

| No. | Group/ORI | Crime Code | Statute | Description | Counts |
|---|---|---|---|---|---|
| 1 | State | 13C | 16-11-37 | Terroristic Threats and Acts (Felony) | 1 |

### Subjects

| Type | No. | Name | Address | Phone | Race | Sex | DOB/Age |
|---|---|---|---|---|---|---|---|
| Complainant | 1 | MCDANIEL, JERRY CLIDE | [redacted] DACULA, GA 30019 | | White | Male | |
| Suspect | 1 | MCDANIEL, JAMES JERRY | [redacted] STATHAM, GA 30666 | | White | Male | |
| Victim | 1 | MCDANIEL, JERRY CLIDE | [redacted] DACULA, GA 30019 | | White | Male | |

### Arrests

| Arrest No. | Name | Address | Date/Time | Type | Age |
|---|---|---|---|---|---|

### Property

| Date | Code | Type | Make | Model | Description | Tag No. | Item No. |
|---|---|---|---|---|---|---|---|

### Vehicles

| No. | Role | Vehicle Type | Year | Make | Model | Color | License Plate | State |
|---|---|---|---|---|---|---|---|---|

**Routing:**

# OfficerID: dpcatapano, ORIGINAL WRITEUP

**On June 12th, 2025, at approximately 1556 hours, I responded code one, routine response, to 233 E Broad Street, the Barrow County Sheriff's Office, regarding a domestic incident that occurred at [redacted] in Statham.**
**I met with the caller, Jerry McDaniel. Jerry explained that he was the legal custodian of his grandson, and his son, James McDaniel, had made threats to kill him. Jerry told me he had punished his grandson, and James heard about it. Jerry said his grandson told him that his father had a 9mm pistol, and told him he was going to kill him when he sees him next. Jerry told me he is in fear for his safety, as James is a well-known drug user and had been arrested before.**
**I met with Jerry's grandson. The grandson told me he was staying with James for a few days over the summer, and would see James using drugs. He told me that one day James showed him a black 9mm pistol, removed a bullet, and carved JC into it, JC being Jerry's nickname. The grandson told me James said he was going to sneak up on Jerry and shoot him in the back of the head. Unrelated, the grandson also said James told him to light the curtains on fire in the house so that he could collect an insurance payout.**
**Jerry told me his grandson is back living with him, so he is not in any danger. I explained the temporary protective order process to Jerry and recommended he follow up with the court the following morning. I also suggested that Jerry call 911 if James shows up at his residence unannounced.**
**I then met with Inv. Smith and briefed him on the call. Inv. Smith met with Jerry and gathered additional information.**
**A/V 2425.**